UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE IGNACIO HERNANDEZ,   )<br>  )<br>           Petitioner,   )<br>  )<br>   v.   )<br>  )<br>  )<br>K. HARRINGTON, Warden,   )<br>  )<br>           Respondent.   )<br>_____) | 1:09-cv-000728 LJO JMD (HC)<br><br>FINDINGS AND RECOMMENDATIONS<br>REGARDING PETITION FOR WRIT OF<br>HABEAS CORPUS |

     Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

     Petitioner was convicted in the Tulare County Superior Court of child molestation and sentenced to a prison term of 62-years to life. (Answer, 6.) Petitioner appealed his conviction to the California court of Appeal, Fifth Appellate District, which affirmed the conviction in a reasoned decision. (See Lodged Doc. 5.) Petitioner's petition for review to the California Supreme Court was summarily denied. (See Lodged Doc. 16.)

     Petitioner filed the instant petition on April 24, 2009. (Doc. #1.) Respondent filed an answer to the petition on September 2, 2009. (Doc. #17.) It is the merits of that petition that will be considered herein.

# BACKGROUND[1]

## PROCEDURAL SUMMARY

The history of defendant's case is complicated, He originally pled no contest, the trial court dismissed his prior "strike" conviction and sentenced him to six years in prison (Case 1). [footnote omitted] The People, however, appealed the trial court's dismissal of the prior conviction (Appeal 1). We reversed and remanded. Defendant then chose to withdraw his plea and proceed with a jury trial, which resulted in guilty verdicts and a 62-year-to-life prison sentence (Case 2). Defendant now appeals from that judgment (Appeal 2). A more detailed summary follows.

*Case 1*

On October 6, 2004, defendant was charged with molestation of a child under 14 years (Pen. Code, § 288, subd. (a) [footnote omitted]; count1) and failing to register as a sex offender (§ 290; count 2). In connection with both counts, it was alleged that defendant had suffered a prior strike conviction (§ 1170.12, sub. (c)(1)) in 1998 for violation of section 288. Various other special allegations were also charged.

On February 1, 2005, the trial court entertained motions in limine and indicated a sentence of 30 years. Defendant chose to proceed to trial.

On February 2, 2005, jury selection and opening statements took place. Before the first witness was sworn, defense counsel moved to strike the prior conviction on the ground that the conviction was constitutionally invalid because "the waiver forms[] and minute notes [did] not indicate that defendant waived his fundamental constitutional rights."

February 3, 2005, the trial court granted defendant's motion to strike the prior conviction. Defendant changed his plea to no contest in exchange for dismissal of count 2 and a six-year term. On February 25, 2005, the prosecution filed a motion to reconsider striking the prior conviction. On March 3, 2005, the court denied the motion to reconsider and sentenced defendant to six years.

*Appeal 1 (By the People)*

On March 14, 2005, the People filed notice of appeal from the trial court's striking of the prior conviction. We reversed and remanded. Remittitur issued on January 30, 2006.

*Case 2*

Back in the trial court on March 22, 2006, the court informed defendant that this court had reversed the striking of the prior conviction. Defense counsel advised the trial court that defendant had been unrepresented during the appeal and counsel requested a continuance to "file he appropriate writ with the Fifth." The court granted a two-week continuance.

The following then occurred:

> [PROSECUTOR]: Your Honor, People have a request. We believe that part of [Defense] Counsel's complaint with regard to the appeal is that the defendant didn't have–didn't understand what was going on because he needed an interpreter. The People would like to inquire if the Court thinks he may need an interpreter today.
> [DEFENSE COUNSEL]: No, that's not the issue at all.
> THE COURT: That's never been the issue.

---

[1] The Background is derived from the facts set forth by the California Court of Appeal, Fifth Appellate District, in its opinion of December 1, 2008, and are presumed correct pursuant to 28 U.S.C. §§ 2254(d)(2), (e)(1). (See Lodged Doc. 5, 2-6).

>           [DEFENSE COUNSEL] I'm sorry, Just so we're all
> clear, I'll put it on the record, and, by the way, your office has
> previously represented that you didn't feel comfortable with my client
> not having been represented with the Fifth.  All of the paperwork from
> CCAP to my client inquires if he wants to appeal.  He did not want to
> appeal.  He was never advised that some other party had appealed and
> that he wanted to be represented as a respondent.  So he's being
> queried, 'Do you want to appeal?'  And he says, 'No."
>           THE COURT: All right, Let's just go forward with the
> paperwork and take care of the writ and see you in two weeks."

At the next hearing, on April 5, 2006, defendant decided to withdraw his plea and proceed to trial.  Defense counsel stated: "At this point in time, it looks like my client has not option but to withdraw his previously entered plea and ask that this matter be set for jury trial."  The court set trial for May 23, 2006.

At the motion in limine hearing on May 22, 2006, when the trial court mentioned the writ, defense counsel stated: "Actually, your Honor, I misspoke when I made that representation to the Court.  My office does not get involved with appellate matters.  CCAP is going to have to do it."

Jury trial began on May 23, 2006, and on May 26, 2006, the jury convicted defendant of child molestation.  He pled no contest to failing to register as a sex offender.  The court found the prior conviction true and sentenced defendant to 50 years to life for child molestation, plus a one-year enhancement and a five-year enhancement, and six years for failing to register as a sex offender.

***Appeal 2 (By Defendant)***

On July 25, 2006, defendant filed a notice of appeal.  On December 10, 2007, defendant filed his opening brief.

***Motion to Recall Remittitur***

On July 9, 2008, defendant filed with this court a motion to recall the remittitur on the ground that he was unrepresented by counsel during Appeal 1.  He maintains he did not have appointed counsel, did not waive counsel and did not elect to proceed in propria persona.

On November 5, 2008, we denied that motion having concluded defendant waived his right to counsel on appeal.

## FACTS

M.J. testified that defendant, a family friend, molested her when she was seven years old.  While he was working on a car, he pushed her into the car and told her to push the gas pedal.  Defendant's hands were greasy.  He approached her, lifted her dress and touched her vaginal area and inserted his fingers into her vagina.

M.J. told her sister, who then told their mother.  M.J. also later told their mother what had happened.  Both M.J.'s sister and mother testified.

A nurse examiner testified that M.J.'s injuries were consistent with her statement describing the molestation.

Two other victims, L.R. and S.L., testified defendant had molested them when they were younger.

***Defense Evidence***

Defendant testified on his own behalf.  He denied molesting M.J., L.R. and S.L. He admitted he pled no contest and was convicted for molesting L.R. in 1998, but explained that he did so to minimize his prison time.

# DISCUSSION

## I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the deprivation in question arose out of the Tulare County Superior Cout, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action. If a constitutional violation has resulted in the loss of time credits, such violation affects the duration of a sentence, and the violation may be remedied by way of a petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990). Thus, this Court has subject matter jurisdiction.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997)) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II. Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of AEDPA. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,

Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a state procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Id.

Here, the Tulare County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. As the California Supreme Court issued a summary denial of Petitioner's claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that of the Fifth Appellate District. See Ylst v. Nunnemaker, 501 U.S. at 804.

**III.  Review of Petitioner's Claims**

Ground One

In the first ground asserted in his petition, Petitioner claims that the second trial, which resulted in his 62-year to life prison sentence, was a violation of his Fifth Amendment protection against double jeopardy. (Pet., 6.)

The Fifth Amendment of the U.S. Constitution "guards against Government oppression,"

United States v. Scott, 437 U.S. 82, 98 (1978), and "guarantees that criminal defendants shall not 'be twice put in jeopardy of life or limb' for the 'same offence,'" United States v. Podde, 105 F.3d 819. 815 (2nd Cir. 1997) (quoting U.S. Const. amend. V).

> The underlying idea, one that is deeply ingrained in at least Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Podde, 105 F.3d at 816 (quoting Green v. United States, 355 U.S. 184, 187-88 (1957)). However, it is "well-settled that double jeopardy does not apply to the original counts in an indictment when a defendant has withdrawn or successfully challenged this plea of guilty to lesser charges," Podde, 105 F.3d at 817 (citing United States v. Barker, 681 F.2d 589, 592 (9th Cir. 1982)), and that "'the Double Jeopardy Clause. . . . does not relieve a defendant from the consequence of his voluntary choice,'" Podde, 105 F.3d at 816 (quoting Ricketts v. Adamson, 483 U.S. 1, 11 (1987)). In fact, there are numerous cases that "hold with apparent unanimity that when [] defendant repudiates the plea bargain, by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy. . . . obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain." Fransaw v. Lynaugh, 810 F.2d 518, 524-25 (5th Cir. 1987) (citing to United States v. Gerard, 491 F.2d 1300 (9th Cir. 1974); United States v. Barker, 681 F.2d 589 (9th Cir. 1982); United States v. Johnson, 537 F.2d 1170, 1174-75 (4th Cir. 1976); Klobuchir v. Pennsylvania, 639 F.2d 966, 970 (3d Cir. 1981); Hawk v. Berkemer, 610 F.2d 445, 448 (6th Cir. 1979); United States v. Anderson, 514 F.2d 583, 587 (7th Cir. 1975)).

> As an initial matter, Petitioner
>
> may only raise a Double Jeopardy claim if he has been put in jeopardy (i.e. jeopardy has 'attached') sometime before the alleged 'second' prosecution. [citations omitted] It is undisputed that jeopardy attaches to the entire indictment as soon as a jury is empaneled. [citations omitted]. . . . However, 'in cases in which a mistrial has been declared prior to the verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.'

Illinois v. Somerville, 410 U.S. 458, 467 (1973).

> The jury was empaneled in the instant case on February 2, 2005, (see Pet., 3) thus jeopardy

attached on that same date.  Petitioner claims that when he plead no contest and received a term of six years and eight months, he was put in jeopardy thereby precluding a second prosecution on those same charges after the appellate court reversed the trial court's dismissal of the 1998 "strike" conviction.  What makes Petitioner's case slightly different from those cited above, is that, while Petitioner voluntarily withdrew his plea, he did so because he felt as though he had no choice as the reinstatement of the 1998 "strike" conviction would surely lead to a far more hefty sentence then he contemplated when deciding to plead no contest.  The appellate court dismissed this contention stating "'[w]hatever [Petitioner]'s motivation for pleading [no contest] and for withdrawing his plea, his voluntary choice to do so releases the government from its obligation not to prosecute and there is no double jeopardy bar to retrying him on the original charges." (Lodged Doc. 4, 9 (quoting Podde, 105 F.3d at 818).)

The appellate court's decision is not an unreasonable application of supreme court law.  The Supreme Court has held that society has an "interest in giving the prosecution one complete opportunity to convict those who have violated its laws," Arizona v. Washington, 434 U.S. 497, 509 (1978).  In this case, the prosecution did not have the opportunity to convict Petitioner with the added "strike" conviction until the appellate court reversed the trial court's dismissal of that conviction.  Furthermore, there is no indication that the government prosecuted the case in a manner meant to harass, embarrass, or cause Petitioner unreasonable expense.  Petitioner had the option of maintaining his no contest plea or withdrawing and taking his chance at trial and he chose to withdraw; thus, it is not objectively unreasonable for the appellate court to have found that there was no double jeopardy in this case.

Ground Two

Petitioner claims that his trial counsel was ineffective in advising him to withdraw his plea of no contest and take his chances at trial, thereby violating his Sixth Amendment right to counsel. (Pet., 8.)

*Exhaustion of State Remedies*

Respondent initially contends that Petitioner's claim of ineffective assistance of counsel has

not been exhausted in the state courts.  (Answer, 10.)

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991);  Rose v. Lundy, 455 U.S. 509, 518 (1982);  Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998).  In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct alleged violations of the prisoners' federal rights'" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to*

> *that court that those claims were based on federal law*. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident*," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
>
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

Petitioner did not raise ineffective assistance of counsel in his appeal to the appellate court, nor did he raise the claim in his petitioner for review to the State supreme court; thus, the claim is unexhausted and should be dismissed.

*Ineffective Assistance of Counsel*

Even though Petitioner's ineffective assistance of counsel claim is unexhausted in the State court, the Court may, but is not obligated to, entertain the merits of the claim. Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999).

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements: (1) counsel' s performance was deficient and (2) petitioner was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687(1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).   Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a "strong presumption that counsel's conduct [falls] within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 687 (quoting Michel v.

1  Louisiana, 350 U.S. 91, 101 (1955)) ; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

2       Second, the petitioner must show that counsel's errors were so egregious that the petitioner
3  was deprived of the right to a fair trial, namely a trial whose result is reliable. Strickland, 466 U.S. at
4  687.  To prevail on the second element, the petitioner bears the burden of establishing that there
5  exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the
6  proceeding would have been different.  A reasonable probability is a probability sufficient to
7  undermine confidence in the outcome." Quintero-Barraza, 78 F.3d at 1348 (quoting Strickland, 466
8  U.S. at 694).  A court need not determine whether counsel's performance was deficient before
9  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland,
10 466 U.S. at 697.  Since prejudice is a prerequisite to a successful claim of ineffective assistance of
11 counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an
12 ineffective assistance of counsel claim.  Id.

13      In light of the circumstances, the Court does not find that trial counsel's representation fell
14 below an objective standard of reasonableness.   The only background facts that Petitioner asserts to
15 support his claim is that "[a]fter making a plea bargain my trial counsel advised me that there were a
16 lot of mistakes made, and withdrawing my plea would allow further investigation and maybe no time
17 or lesser." (Pet., 8.)  Respondent argues that Petitioner's claim is "incomprehensible," (Answer, 10)
18 but the Court finds the claim fairly straight forward.  Petitioner is claiming that he relied on the
19 advice of his counsel to withdraw his plea and in doing so he went from a six year and eight month
20 sentence to a sentence of 62 years to life.  However, the massive increase in Petitioner's sentence
21 was not merely due to him withdrawing his plea, it was due to the fact that the appellate court
22 overturned the trial court's dismissal of Petitioner's prior "strike" conviction.  During motions in
23 limine, the trial court indicated that Petitioner was looking at a 30 year sentence.  Then, after the
24 court dismissed the prior "strike" conviction, Petitioner was able to plead no contest and only
25 received six years, eight months.  However, when appellate court reinstated the prior "strike"
26 conviction, Petitioner's attorney saw that his client would almost surely receive at least 30 years, as
27 previously indicated by the trial court.  It was not objectively unreasonable at that point to advise
28

Petitioner to withdraw his plea and take his chances at trial. Petitioner makes no assertion that counsel promised him that he would be acquitted or even that counsel said that a favorable outcome was likely; counsel merely stated that, with further investigation, Petitioner might end up with a shorter sentence. Petitioner views his attorney's advice as taking him from a six year, eight month sentence to a 62 year to life sentence; however, in reality, the minimum sentence that Petitioner could hope to receive though a plea was 30 years. It was not unreasonable for Petitioner's counsel to suggest that Petitioner take his chances with trial rather than resign himself to, at minimum, a 30 year sentence.

As Petitioner's counsel's representation did not fall below an objective standard of reasonableness, Petitioner should not be granted relief on Ground Two.

## CONCLUSION

In light of the foregoing, Petitioner should not be granted habeas relief with regards to either Ground One or Ground Two.

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that:

1) the petition for a writ of habeas corpus be DENIED; and

2) the Clerk of Court be DIRECTED to enter judgment.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 2, 2010                     /s/ John M. Dixon**

1                                UNITED STATES MAGISTRATE JUDGE